UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 3:24cr67-TKW

JORGE CENTENO-ROJAS,

    Defendant.
_____/

## ORDER OF DETENTION

Defendant has been indicted on one count of illegal reentry into the United States after being deported or removed in violation of 8 U.S.C. § 1326(a) and § 1326(b)(1). Doc. 15. At Defendant's initial appearance,[1] the Government moved for detention under 18 U.S.C. § 3142(f)(2) of the Bail Reform Act ("BRA"), based on a risk of flight and non-appearance. Doc. 9. The Court held a detention hearing on August 20, 2024. For the reasons set forth below, the Court finds Defendant shall be detained under the BRA.

    **I.**    **Risk of Flight**

Under the BRA, when the Government moves for detention based on risk of flight, it is the Government's burden to prove by a preponderance of the evidence

---

[1] Defendant was initially before the Court on a criminal complaint, 3:24mj251-HTC, and that was when the Government moved for detention. However, just prior to the detention hearing, Defendant was indicted.

1

that, if released, there is a serious risk Defendant will leave the jurisdiction to avoid prosecution or will not show up for his court appearances. Once the Government meets its burden of showing it is more likely than not there is a serious risk Defendant will flee, the Court must then consider the factors set forth in § 3142(g) to determine whether there are any conditions or combination of conditions the Court may impose that will reasonably assure the Court Defendant will be neither a serious risk of flight or a danger to the community.

Here, the Government argues Defendant is a serious risk of flight because he is in the United States illegally, has been deported on at least 5 prior occasions, faces a maximum sentence of 10 years of incarceration,[2] has no ties to this District, and has the financial ability to avoid prosecution. The Government also argues there is a good chance Defendant is using false documentation because he has been able to obtain steady gainful employment while he has been in the United States, although the Government does not yet have any evidence of this. Finally, the Government argues Defendant is a danger to the community under the § 3142(g) factors because his criminal history includes two DUI convictions since 1999, and a pending DUI charge for which he is accused of having a BAC of .264 and .265.

---

[2] Defense counsel stated he believes the guideline range would be 0-6 months.

Given Defendant's prior deportations, the potential penalties he is facing with the federal illegal reentry charge and state DUI charge,[3] and Defendant's financial position, the Court finds the Government has established by a preponderance of the evidence Defendant is a serious risk of flight. The Court will therefore move to the second part of a detention analysis under the BRA, which is consideration of the § 3142(g) factors.

## II.     Bail Reform Act, § 3142(g) Factors

The BRA identifies the factors a court must consider when deciding whether to release or detain a defendant. 18 U.S.C. § 3142(g). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." *Id*.

### A. Nature and circumstances of the offenses charged

First, the Court considers the nature and circumstances of the offense charged. When considering the nature and circumstances of the offense, the Act instructs a court to consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled

---

[3] The Court notes the State could choose to charge Defendant with a felony DUI since the recent charge would be his third conviction.

substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant is charged with illegal reentry, which does not fall into any of those categories.

That said, the nature of an illegal reentry charge necessarily includes some risk of flight because Defendant has some ties to another country and lacks the right to be in the United States. While Defendant's status as an illegal alien does not mean he is automatically subject to detention, it is a factor the Court considers in determining the risk of nonappearance or danger to the community. *See United States v. Santos-Flores*, 794 F.3d 1088, 1093 (9th Cir. 2015) ("alienage may be taken into account, but it is not dispositive").

### B. The weight of the evidence

Next, the Court considers the weight of the evidence. This factor concerns both the weight of the evidence of dangerousness, as well as the strength of the Government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). Here, based on the indictment and the information in the affidavit supporting the criminal complaint, as well as the fact Defendant has previously been convicted of illegal reentry, the Court finds the weight of the evidence against Defendant to be strong, and thus, this factor weighs in favor of detention.

### C. The history and characteristics of Defendant

The Court is also required to consider Defendant's history and characteristics, which include his criminal history, ties to the community,[4] employment history, and history of substance abuse, if any.

Defendant is 40 years old, was born in Mexico, and has a Mexican passport. He was identified by Officers of the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE") as an illegal alien after he was arrested on August 11, 2024, in Santa Rosa County, Florida for a DUI. He has been in and out of this country since at least 1999. He does not speak any English. Defendant has no ties to the Northern District of Florida, although he has been in the District for about a year, living in various cities in the District as his construction work requires. Defendant has worked in construction most of his life.

Defendant has been married to his current wife for 12 years and they share two minor children. Defendant's wife and children live in Texas. Defendant and his wife own two properties in Texas that are unmortgaged – one is their primary residence, valued at approximately $200,000, and the other is a rental property. Defendant also owns several vehicles. Before his incarceration, Defendant made

---

[4] "Community ties" under the BRA may embrace the charging district as well as another community in the United States. *See Santos-Flores*, 794 F.3d at 1093.

5

approximately $90,000 annually and has $22,000-$30,000 in a savings or checking account. Defendant's wife owns her own business and is a United States citizen.

Defendant also has two adult children from a prior relationship who attend a university in North Carolina, and whom Defendant supports. He also has an adult stepdaughter who lives in North Carolina. Additionally, Defendant's mother lives in North Carolina as well as 7 of his 9 siblings; they are all United States residents. Defendant also has two siblings in Mexico.

According to the Pretrial Services Report ("PSR") and Affidavit of Deportation Officer Vu, Defendant has been removed from the United States on at least 5 prior occasions. On two of those occasions, Defendant was convicted of illegal reentry. In addition to the illegal reentry convictions, Defendant has also been convicted of two DUIs, one in 1999 and one in 2015. Also, as stated above, Defendant has a pending DUI charge against him. According to the PSR's summary of the incident report for that charge, Defendant was seen driving at erratic speeds, ranging from 20 mph to 60 mph. When he was stopped by law enforcement, he exhibited signs of intoxication, failed the Field Sobriety Tests, and had a BAC of .264 and .265.

Finally, according to the USPO, Defendant is subject to an ICE detainer and therefore could be subject to detention by ICE or removal from the United States, even if released by the Court. Although "a deportable alien" is not categorically

"barred from release," Defendant's likely removal upon release from custody is a factor to weigh in the flight analysis. *See United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 596 (E.D. Ky 2023) (citing *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001)).

### D. Nature and seriousness of the danger posed by release.

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. Because Defendant is in the United States illegally, has exhibited a history of failing to abide by the law, and has a history of severe alcohol abuse, the Court finds Defendant poses a serious risk of danger if released.

### III. Conclusion

This is a difficult case because Defendant's ties to the United States appear to be significant and greater than his ties to Mexico. Also, Defendant has exhibited an ability to be consistently gainfully employed given his financial condition. If that was the whole picture before the Court, the Court would likely find in favor of release.

However, the Court cannot overlook Defendant's criminal history – particularly Defendant's repeated commissions of the same offenses (i.e., illegal

reentry and DUI[5]). The fact Defendant has been removed at least 5 times and is facing his third DUI charge shows he is not disposed to follow the orders of the Court or abide by the law; it shows a lack of respect for the law. *See Cobix-Espinoza*, 655 F.Supp.3d at 595 ("the nature of the [alleged] crime—returning to the United States, despite prior removal from this country by court order—indicates [Cobix-Espinoza] is not disposed to follow the orders of this Court"); *id.* at 596 (noting characteristics such as issues with substance abuse and multiple convictions for alcohol-related offenses "typically weigh[] in favor of detention"); *see also United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1144 (D. Idaho 2023) ("Multiple illegal reentries after removal demonstrate greater disrespect for court orders and the law" and are "predictive of non-appearance").

The Court also notes Defendant has the financial means to avoid prosecution if he wanted to do so, even if the Court were to accept the pledge of his home as security for his bond, and given the potential penalties Defendant faces, he is likely more inclined to avoid prosecution now than he was in the past. *See Figuero-Alvarez*, 681 F. Supp. 3d at 1142 ("An alien defendant who has access to significant sums of money – from either his or her own bank accounts, or those of immediate family members, or cash – has a greater ability to flee.").

---

[5] While Defendant advised USPO that he is amenable to treatment and recognizes he has a problem, Defendant's wife reported he drinks 2 liters of alcohol a week and denies having a problem.

Thus, considering the totality of the evidence, the Court finds the § 3142(g) factors weigh in favor of detention and does not find it can be reasonably assured Defendant will not be a serious risk of flight or danger to the community if released. *See id.* (identifying factors for consideration as including multiple illegal reentries, substance abuse, reliability and trustworthiness, incentive to flee, and ability to flee); *see also, Flores*, 794 F.3d at 1092 (noting factors to consider in an individualized determination of detention in an illegal reentry case include multiple unlawful entries into the United States, the severity of the potential punishment, and the weight of the evidence).

Accordingly, IT IS ORDERED Defendant be detained pending trial.

**DONE AND ORDERED** this 22nd day of August, 2024.

*s/ Hope T Cannon*
Hope T. Cannon
United States Magistrate Judge